UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHELLE BRESLER AND SADEGHI CENTER FOR PLASTIC SURGERY, LLC, Individually and As Assignees and Authorized Representative of M.B.<br><br>VERSUS<br><br>UNITED HEALTHCARE INSURANCE COMPANY and UNITED HEALTHCARE OF LOUISIANA, INC. | CIVIL ACTION NO. _____ |

\* \* \* \* \* \* \*

FILED: _____        _____
                                                                                          DEPUTY CLERK

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, come Plaintiffs, Michelle Bresler and Sadeghi Center for Plastic Surgery, LLC, f/k/a Aesthetic and Reconstructive Breast Center, LLC individually and as Assignee and Authorized Representative of M.B. and for its Complaint ("the Complaint") who avers as follows:

*Introduction*

1. At all times relevant hereto, Michelle Bresler was a "beneficiary," as defined by 29 U.S.C. § 1002(8), in an "Employee Health Benefit Plan," as defined by 29 U.S.C. § 1022(1) (the "Plan.")., which was sponsored by IQGEO America, Inc. and administered by United Healthcare of Louisiana, Inc. and/or United Healthcare Insurance Company

2. This case is a claim for benefits due under the Plan, as hereinafter defined, based upon adverse benefit determinations for services rendered to Michelle Bresler by Sadeghi Center

for Plastic Surgery, LLC. The Plan delegated responsibility to make the benefit determinations at issue to United Healthcare of Louisiana, Inc. ("UHL") and/or United Healthcare Insurance Company("UHIC") (UHL and UHIC are collectively referenced as "United") under the express terms of the Plan. As such, United is a fiduciary under ERISA.

3. Additionally, this case asserts claims for breach of contract and/or detrimental reliance under Louisiana law as between United and the Sadeghi Center for Plastic Surgery, LLC individually which arise from an independent duty owed to Sadeghi Center for Plastic Surgery, LLC by United separate from any claim under ERISA.

### The Parties

#### *Plaintiffs*

4. Plaintiff, Sadeghi Center for Plastic Surgery, LLC ("SCPS" or "Plaintiff Provider") is a Louisiana limited liability company domiciled in the Parish of Jefferson, State of Louisiana.

5. Plaintiff, Michelle Bresler ("Ms. Bresler"), is a citizen of the Parish of Orleans, State of Louisiana.

#### *Defendants*

6. Defendant, UHL, is a corporation organized and existing under the laws of the State of Louisiana domiciled, authorized to do and doing business in Louisiana, and subject to personal jurisdiction within this judicial district.

*7.* Defendant, UHIC, is a corporation organized and existing under the laws of the State of Connecticut subject to personal jurisdiction within this judicial district.

*Jurisdiction and Venue*

8. The Defendants' actions in administering the Plan are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001-1461 ("ERISA"). This Court possesses subject matter jurisdiction over the claim for benefits brought under 29 U.S.C. § 1132(a)(1)(B) is action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).

9. Additionally, this Court has jurisdiction over the non-ERISA claims of breach of contract and detrimental reliance pursuant to its supplemental jurisdiction arising under 28 U.S.C. § 1367.

10. Venue is appropriate in this court pursuant to 28 U.S.C. §1391 in that the events giving rise to the claims occurred in the Eastern District of Louisiana, including but not limited to the professional medical serviced provided by Plaintiff Provider to patient M.B., as well as the events or omissions by United giving rise to the claims set forth herein.

*Standing*

11. As a "beneficiary" of the Plan as that term is defined in 29 U.S.C. §1002(8), Ms. Bresler has standing to bring this action under 29 U.S.C. §1132(a)(1)(B).

12. As to Counts 2 and 3, Plaintiff Provider brings those claims on an individual, not representative, basis as those counts assert causes of action separate from any claims assigned by M.B. to the Plaintiff Provider.

*Factual Background*

13. In 2019, Ms. Bresler was diagnosed with breast cancer and underwent bilateral mastectomies.

14. Following a mastectomy, the Plaintiff Provider performed bilateral breast reconstruction with deep inferior epigastric perforator (DIEP) flaps on Ms. Bresler on October 17, 2019 ("Initial Procedure").

15. A DIEP Flap is a cutting-edge breast reconstruction procedure that uses a flap of complete tissue, blood vessels, skin and fat from the woman's lower abdomen as donor tissue. The flap is then transplanted to the chest where those removed blood vessels are reconnected to the vessels in the chest. The flap is then shaped into a new breast and the abdomen is surgically closed. There are few surgeons with proper training and skill to perform this complex procedure.

16. SCPS operates through its principal, Alireza Sadeghi, M.D. ("Dr. Sadeghi")

17. Dr. Sadeghi is a double board certified plastic surgeon and reconstructive microsurgeon who specializes in reconstructive breast surgery for women who have dealt with breast cancer in the past. He graduated from the Karol Marcinkowski University of Medical Sciences, where he received his Ph.D. He completed his internship and residency in general surgery at SUNY Downstate Medical Center, where he also served as Chief Resident. He then completed an additional residency at LSU Health Sciences Center in plastic and reconstructive surgery, and again served as Chief Resident. His principal office is in New Orleans, Louisiana.

18. Prior to the Initial Procedure, Ms. Bresler and Plaintiff Provider contacted United and requested a pre-authorization for Initial Procedure referencing multiple medical codes.

19. The preauthorization request further explicitly stated that Dr. Sadeghi would be performing the Initial Procedure and that it would be done at the Touro Infirmary facility.

20. In response to the preauthorization request United authorized the Reconstruction Procedure, reference number A082443530.

21. Through correspondence to Ms. Bresler, copied to Dr. Sadeghi, dated October 14, 2019 ("Preauthorization Letter'), United stated that "[a]fter review of the information submitted and your plan documents, it was determined that the treatment [i.e., the Initial Procedure] is medically necessary and is covered by your plan" and then referenced the following specific medical codes pertaining to the Reconstruction Procedure: 19364, S2068, 21600, 15002, and 64488.

22. Through this Preauthorization Letter, United specifically acknowledged that the codes cited therein were proper and authorized.

23. The Preauthorization Letter further identified the "requested service or care" being addressed therein as follows:

- Physician/health care professional: Alireza Sadeghi
- Facility Name: Touro Infirmary
- Type of Treatment: Inpatient services;
- Date(s) of service: 10-17-2019
- Admission date (if applicable): 10-17-2019
- Number of extended days: 1
- Net anticipated date of review: N/A
- New total number of days or services approved: 1

24. Plaintiff Provider received the Preauthorization Letter and relied upon the Preauthorization Letter, and United's authorization stated therein, in proceeding with the Initial Procedure.

25. Through the Preauthorization Letter, United explicitly stated that the Initial Procedure was medically necessary and covered by the Plan.

26. The Reconstructive Procedure is directly covered by the Plan, which states in relevant part as follows:

**27. Reconstructive Procedures**

Reconstructive Procedures when the primary purpose of the procedure is either of the following;
- Treatment of a medical condition.
- Improvement or restoration of physiologic function.

Reconstructive procedures include surgery or other procedures which are related to an Injury, Sickness or Congenital Anomaly. The primary result of the procedure is not a changed or improved physical appearance

Cosmetic Procedures are excluded from coverage. Procedures that correct an anatomical Congenital Anomaly without improving or restoring physiologic function are considered Cosmetic Procedures. The fact that you may suffer psychological consequences or social avoidant behavior as a result of an Injury, Sickness or Congenital Anomaly does not classify surgery (or other procedure done to relieve such consequences or behavior) as a reconstructive procedure.

Please note that Benefits for reconstructive procedures include breast reconstruction following a mastectomy, and reconstruction of the non-affected breast to achieve symmetry. Other services required by the Women's Health and Cancer Rights Act of 1998, including breast prostheses and treatment of complications, are provided in the same manner and at the same levels as those for any other Covered Health Care Service. You can call us at the telephone number on you ID card for more information about Benefits for mastectomy-related services.

27. Additionally, the Plan states as follows pertaining to breast cancer coverage:

Women's Health and Cancer Rights Act of 1998.

As required by the *Women's Health and Cancer Rights Act of 1998,* Benefits under the Policy are provided for mastectomy, including reconstruction and surgery to achieve symmetry between the breasts, prostheses, and complications resulting from a mastectomy (including lymphedema).

If you are receiving Benefits in connection with a mastectomy, Benefits are also provided for the following Covered Health Services, as you determine appropriate with your attending Physician:

- All stages of reconstruction of the breast on which the mastectomy was performed;

- Surgery and reconstruction of the other breast to produce a symmetrical appearance; and

- Prostheses and treatment of physical complications of the mastectomy, including lymphedema.

The amount you must pay for such Covered Health Services (including Copayments, Coinsurance and any deductible) are the same as are required for any other Covered Health Service. Limitations on Benefits are the same as for any other Covered Health Service.

28. In relevant part, the Plan states as follows pertaining to the definition of Allowable Expense:

Allowable Expense. Allowable Expense is a healthcare expense, including deductibles, co-insurance and co-payments, that is covered at least in part by any Plan covering the person. When a Plan provides benefits in the form of services, the reasonable cash value of each service will be considered an Allowable Expense and a benefit paid. An expense that is not covered by any Plan covering the person is not an Allowable Expense. In addition, any expense that a provider by law or according to contractual agreement is prohibited from charging a Covered Person is not an Allowable Expense.

29. The Plan further states as follows pertaining to Out of Network Benefits:

For Out-of-Network Benefits, Allowed Amounts are based on either of the following:

- o When Covered Health Care Services are received from an out-of-Network provider, Allowed Amounts are determined, based on:

    - Negotiated rates agreed to by the out-of-Network provider or sub-contractors and either us or one of our vendors, affiliates

    - If rates have not been negotiated, then one of the following amounts:

        - Allowed Amounts are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services(CMS) for Medicare for the same or similar service within the geographic market, with the exception of the following:

        - When a rate is not published by CMS for the service, we use an available gap methodology to determine a rate for the service as follows:
            …
        - For services other than Pharmaceutical Products, we use a gap methodology established by OptumInsight and/or a third party vendor that uses a relative value scale. The relative value scale

…

>is usually based on the difficulty, time, work, risk and resources of the service. If the relative value scale(s) currently in use becomes no longer available, we will use a comparable scale(s). We and OptumInsight are related companies through common ownership by UnitedHealth Group. Refer to our website at www.myuhc.com for information regarding the vendor that provides the applicable gap fill relative value scale information.

30. Pursuant to the clear terms of the Plan, the billed costs/expenses for the Initial Procedure were Allowable Expenses covered by the Plan and, consequently, it was a breach of the Plan terms for United to reject the claims submitted by the Plaintiff Provider.

31. Further, based on the Preauthorization Letter, the Plaintiff Provider entered into a binding contractual agreement with United, whereby Plaintiff Providers would perform the Initial Procedure and United would pay it the reasonable and customary charges incurred for the Initial Procedure.

32. On October 17, 2019 Dr. Sadeghi undertook and completed the Initial Procedure in accordance with the authorization of United.

33. Following the Initial Procedure, on or about November 11, 2022, SCPS submitted a claim to United in the amount of $130,000 in accordance with the agreement evidenced by the Preauthorization Letter.

34. Consistent with the Approval Letters, SCPS submitted to United a claim for his bill under two CPT codes: S2068-RT and S2068-LT.

35. However, United refused to abide by its agreement stated in the Preauthorization Letter and paid SCPS only a fraction of the reasonable and customary cost of the Initial Procedure.

36. United agreed to pay to the Plaintiff Provider only $33,374.10 rather than the $130,000 billed.

37. The amount paid is drastically below the relative value of the Initial Procedure.

38. Thereafter, due to the need for additional care for the breast reconstruction after the Initial Procedure, on December 27, 2019, Ms. Bresler was required to undergo a second procedure ("Second Procedure") which was undertaken and completed by Dr. Sadeghi.

39. Thereafter, SCPS submitted a claim to United in the amount of $149,200 for the Second Procedure.

40. Despite its previous authorization for breast reconstructive surgery, including a determination that such surgery was both medically necessary and covered by the Plan, United refused to make any payment for the Second Procedure.

41. In response to United's refusal to pay the claims submitted for the Initial Procedure, and the Second Procedure, which was directly contrary to the representations and agreement evidenced by the Preauthorization Letter, the Plaintiff Provider submitted both first and second level member appeals to United ("Member Appeals").

42. In response to these appeals, United continued to deny its liability and refused to perform in compliance with the terms of the agreement reached with the Plaintiff Provider as evidenced by the Preauthorization Letter.

43. As such, United's refusals to make sufficient payment for Ms. Bresler's claims under the term of the Plan are "adverse benefit determinations" under ERISA.

44. Further, as stated above, any administrative remedies that may be required to be pursued under ERISA have, therefore, been exhausted, should be deemed exhausted under applicable regulations, or would be futile under the circumstances, and are therefore excused and Ms. Bresler is permitted to now pursue remedies available under 29 U.S. C. A. 1132.

45. Still further, United's refusal to pay the reasonable and customary charges/costs for the Initial Procedure and the Second Procedure breaches the agreement reached between United and Plaintiff Provider.

### *Count One – Claim for Plan Benefits under 29 U.S.C. § 1132(a)(1)(B)*

46. Ms. Bresler and Plaintiff Provider incorporate by reference all of the allegations stated in Paragraphs 1-44 above.

47. By failing to adequately pay benefits to Plaintiff Provider for serviced provided to Ms. Bresler, United violated obligations set forth in the Plan, and such refusal and/or lack of payment was arbitrary, capricious and manifestly mistaken.

48. Included in the arbitrary and capricious violations of the Plan, and of ERISA, is the refusal to recognize the claim submitted with the citation to the CPT code S2068 code as that code was directly referenced in the Authorization Letter.

49. Because Ms. Bresler is a beneficiary under the Plan, she has standing to bring this cause of action under 29 U.S.C. § 1132(a)(1)(B) to enforce rights created by the Plan and to seek benefits relating to services provided to her by SCPS

### *Count Two – Breach of Contract*

50. Ms. Bresler and Plaintiff Provider incorporate by reference all the allegations stated in Paragraphs 1-47 above.

51. As evidenced by the Preauthorization Letter, prior to the Initial Procedure and Second Procedure (collectively "Reconstruction Procedure"), United agreed that the Reconstruction Procedure was authorized, covered and medically necessary.

52. Through the preauthorization process, United represented to Plaintiff Provider that the Reconstruction Procedure was both medically necessary and covered by the Plan.

53. As evidenced by the Approval Letters, United authorized the Plaintiff Provider to undertake the Reconstruction Procedure for Ms. Bresler with the agreement that United would provide to the Plaintiff Providers the customary and reasonable compensation for such procedure.

54. Consequently, as evidenced by the Preauthorization Letter, a meeting of the minds was reached between the Plaintiff Provider and United whereby United agreed that the Plaintiff Provider would perform the Reconstruction Procedure for Ms. Bresler and United would pay to the Plaintiff Provider the reasonable and customary fee for such procedure.

55. However, United breached that agreement and refused to pay to the Plaintiff Provider the reasonable and customary fee for such procedures.

56. Specifically, despite its prior agreement, United refused to perform its contractual obligations and made insufficient payment to the Plaintiff Provider for the Initial Procedure and no payment for the Second Procedure.

57. Further, despite its prior agreement, United refused to perform its contractual obligations.

58. As a result of its breach of its contractual obligations, United is liable to Plaintiff Provider for damages.

59. As a result of that breach, the Plaintiff Provider incurred damages in an amount to be shown at the trial of this matter. Specifically, the Plaintiff Providers were damaged by the refusal of United to pay the reasonable and customary fee for the Initial Procedure and the Second Procedure (collectively "Reconstruction Procedure.")

### *Count Three – Detrimental Reliance*

60. Ms. Bresler and Plaintiff Provider incorporates by reference all the allegations stated in Paragraphs 1-57 above.

61. Through its conduct and/or word, including but not limited to the representations stated in the Preauthorization Letters, United represented to the Plaintiff Provider that the Reconstruction Procedure was both covered and medically necessary, that the Plaintiff Provider was authorized to undertake the Reconstruction Procedure and that United would pay the reasonable and customary fees for the Reconstruction Procedure.

62. The Plaintiff Provider justifiably relied on those representations by United,

63. The Plaintiff Provider changed their position to their detriment based on said representations by, *inter alia*, undertaking the Reconstruction Procedure for Ms. Bresler

64. Despite its representations and the completion of the Reconstruction Procedure, United refused to make full and complete payment to the Plaintiff Provider.

65. As a result of the representations made by United, and the Plaintiff Provider's change in position made in reliance on said representations, United is liable to Plaintiff Provider.

66. As a result of the Plaintiff Provider's justifiable reliance on the representations of United, and their change in position based on said reliance, Plaintiff Provider has incurred damages in the amount to be proven at the trial of this matter.

### *Jury Demand*

67. Plaintiff Provider demands trial by jury as to all counts for which trial by jury is available.

**WHEREFORE**, the Plaintiff Provider request that this Petition for Damages be deemed good and sufficient and that United HealthCare Louisiana, Inc., and United Healthcare Insurance

Company be duly cited and served with this Petition for Damages, and that after due proceedings are had there be judgment rendered herein in favor of Michelle Bresler and Sadeghi Center for Plastic Surgery, LLC and against United HealthCare Louisiana, Inc. and United Healthcare Insurance Company, awarding them:

    A.    All damages to which they may be entitled;

    B.    Awarding such legal interest on all unpaid or withheld amounts as may be appropriate under governing law; and

    C.    Granting such other general and equitable relief as the nature of this case may permit.

Respectfully submitted,

    /s/ Thomas M. Beh
THOMAS M. BEH (# 24018)
STEPHEN B. MURRAY,, Jr. (#27694)
THE MURRAY LAW FIRM
701 Poydras Street, Suite 4250
New Orleans, LA 7019
Telephone: (504) 525-8100
Facsimile: (504) 584-5249
Email: Tbeh@murray-lawfirm.com

Attorneys for Plaintiffs

**PLEASE SERVE**:

UNITEDHEALTHCARE OF LOUISIANA, INC.
Through its registered agent for service of process
CT Corporation
2867 Plaza Tower Drive
Baton Rouge, LA 70816

UNITEDHEALTHCARE INSURNACE COMPANY
Through its registered agent for service of process
Louisiana Secretary of State
8585 Archives Avenue, Baton Rouge, LA 70809